The next case on the docket is Jeffrey Cochran versus the Penn Mutual Life Insurance Company. And David Bain is here for the appellate. Cochran, Laura McNally is here for the appellee. And Mr. Bain, you may begin your argument. Thank you, Your Honor. May it please the court. As Judge Wilson just noted, I'm David Bain, counsel for the appellate Jeffrey Cochran. This case is about a self-dealing fiduciary. Worse than that, it's about a self-dealing fiduciary who's getting away with it thanks to the district court's reasoning and its intrusion into the field of state law. What I'm hoping to accomplish here today is to leave this panel with the impression that this is a problem, a related problem, the SLUSA intrusion into state law and the impunity it affords a self-dealing fiduciary, as we've seen in this case. It's a problem the law should be concerned with. The underlying claim, the central claim that issue... Counsel, you would agree, putting aside those lofty principles and aspirations, that the real issue is under the Security Litigation Uniform Security Act, right? I'm sorry. The issue is under SLUSA. Correct, Your Honor. All right, and whether your claim is dependent upon or incorporates a misrepresentation, it's either affirmative misrepresentation or a failure to disclose material facts. Correct. That's a narrow issue. I thank you for bringing us a narrow, sharply defined issue. It's a pleasure to get those after all the other issues we've had. But my question to you is, you base it on, I believe it's the Howell case, is it not? Holmes, Your Honor. Oh, I'm sorry. Holmes v. Grubman. Right, and in Holmes v. Grubman, Georgia Decision, Supreme Court of 2010, they talked about your cause of action, and it said, plaintiff at trial, burden is on him to prove approximate cause with respect to a tort claim based on misrepresentations or omissions concerning publicly traded securities. And it went on to say, in order to recover in tort for fraud, the plaintiff must prove he sustained loss or damage as approximate results of an alleged misrepresentation. Spoke about a person who misrepresents with respect to a tort based on misrepresentations or omissions concerning publicly traded securities. A stockbroker's duty is fiduciary in nature. Requirements of good faith demand the principal's interest. It is the agent's duty to make known to the principal all material facts. And it goes on and on. Holmes v. Grubman laid out the parameters of the tort that you're basing your class action on under Georgia law. The tort requires misrepresentations, affirmative or failure to admit. It says so from the beginning of the Holmes decision to the end. I don't understand how you get around the Slusa Bar, which says state laws based on misrepresentations or failures to disclose are barred in a class action in state or federal court. Going back to your honor's point about the Holmes opinion, the pertinent piece of that is the third certified question. The second circuit certified three questions of Georgia law to the Georgia Supreme Court. It's the third one that we're concerned with here. Does a brokerage firm owe a fiduciary duty to customers, holders of a non-discretionary account under Georgia law? And the answer is, of course it does. And the Georgia Supreme Court throughout Holmes, and I don't want to belabor the point, but they explain throughout Holmes that the tort of violating that fiduciary duty requires a misrepresentation. I don't, I'm not sure what part of the opinion you're reading from your honor, but I don't believe that it does. I read you throughout. With respect to a non-discretionary, this is talking, quoting with favor from the court of appeals decision. With respect to a non-discretionary account, which this one, as I understand was, the broker owes a number of duties to the client, including the duty to transact business only after receiving prior authorization. That's not disputed here. And the duty not to misrepresent any fact material to the transaction. Certainly. You've got to, you've got to breach the fiduciary duty to misrepresent a fact material to the representation, to the transaction. I'm sorry. That, it is true, your honor, that a fiduciary has also has a duty not to commit fraud. And I believe that's what the Holmes court may be getting at there. But every, every court that I know of who've ever addressed common law or statutory fraud has said an essential element of it is misrepresentation or omission of a material fact. Certainly, that's a common law fraud claim, but that's not what we're talking about here. We're talking about a claim for breach of fiduciary duty. Frauds can be a breach of fiduciary duty. But isn't the breach of fiduciary duty based on an omission or misrepresentation? Really, it's an omission because your argument is, is that they should have told you about, I guess, the double dipping with the, with the annuities. No, that's the district court's argument. My argument is. Well, I read, I read the complaint. So those are basically the, the, the allegations that are alleged in the complaint, are they not? I don't believe so, your honor. I don't mean to argue with you on that point, but the, the claim at issue here, Georgia law requires three elements in order to prove a breach of fiduciary duty claim. Just three. The existence of the duty, breach of that duty, and damages as a result. Nothing about misrepresentation or omission. How do you, how do you breach a fiduciary duty with failing to disclose or with misrepresenting a fact? How do you breach it? I've got a fiduciary duty and you come to me and say, fine, this is a non-discretionary account. What should I do? How do I breach that fiduciary duty without misrepresenting or failing to disclose something to you? By self-dealing is the short answer to that, your honor. This case is about self-dealing. Suppose you came to me and I said, I've got a fiduciary duty and I want to carry it out. And I want to tell you, I think this is good for you, but you got to know I have a self-dealing conflict of interest and here it is. Now, Mr. Sophisticated Investor, you make the decision. I've disclosed everything to you, including the fact that I have a conflict of interest, but you decide, you know it, you understand that? How is that a breach of fiduciary duty? It's a breach of fiduciary duty because this never should have been allowed to happen. Well, that means that, but it's allowed to happen so long as the client wants it to happen and is fully informed and makes a voluntary decision to let it happen. That's not a breach of fiduciary duty. If the client is fully informed, it's not a fraud either. That's where the district court's analysis falls apart. It's factually incorrect to say that there was a fraud here. Everything was disclosed. When I say we're not challenging the disclosures in this case, there's a good reason for that. The disclosures are impeccable. They disclosed everything. Every material point, every material point, that is, that we're talking about here, the captive structure, the high fees, the redundant tax treatment, it's all disclosed. Defendant's briefing is very clear on this point. They brag about these disclosures. The significance is, if everything's disclosed, there is no fraud claim. This cannot be stated as a fraud claim here. What claim is it? It's a claim for breach of fiduciary duty. I may take a moment to talk about- Where is any Georgia law that says you breach fiduciary duty by letting somebody make a fully informed, voluntary decision that you wouldn't have made or that a reasonably prudent person would not have made? I haven't seen that in Georgia law, and you certainly don't cite it, and it certainly is not in the Holmes decision. It certainly is not in the- What? I missed that last part, Your Honor. The Holmes versus Grubman decision. It's not in there. Where is the Georgia law basis? I didn't see it in your complaint. The answer is- Where is the Georgia law basis for you can have a breach of fiduciary duty without any misrepresentation or failure to disclose? Griffin v. Fowler is the case I'm referring to for the point that there are three elements to a breach of fiduciary duty claim. I know, one of which is the duty is breached, but you've got to come up with a decision if you're going to rest on- Georgia law doesn't require representation, implicit or explicit, or failure to disclose. You can come up with a Georgia decision that says a breach of fiduciary duty can occur even without a representation or but then just says there is a duty and it's breached. What? The answer to this, if I may take a moment to talk about terminology, conflict, the terms conflict and self-dealing are used a lot throughout the briefing, and at times they're almost used interchangeably. The conflict is a situation that poses a test for the fiduciary. The fiduciary is at a fork in the road. It's got two choices, one of which is good for the beneficiary, the other of which is good for the fiduciary. That's the conflict. It's a test. The self-dealing is the breach. It's the response to that test. It's flunking the test by choosing what's good for the fiduciary rather than the beneficiary, throwing the beneficiary under the bus. Self-dealing is by definition a breach of the fiduciary. But under your allegations, the defendant didn't do that. You said there were impeccable disclosures. So if anything, your client threw himself under the bus. There's a duty at the firm level. Under Holmes v. Grubin, the brokerage firm has a duty. And our point here is that not to let not to let a fully informed client do what he insists on doing after impeccable disclosures. Not to allow not to allow self-dealing as an option. Self-dealing should not be one of the choices here. The firm didn't do self-dealing. The client did self-dealing after impeccable disclosures of the conflict of interest. I don't have a Georgia case for you, but the restatement, the law is clear that when you're talking about a doesn't get them off the hook here. I'm over my original allotment of time. I would like to answer any questions the court has, but otherwise reserve the remainder. All right, Mr. Bain, you've reserved some time for rebuttal. Let's hear from Ms. McNally on behalf of Penn Mutual. And you are muted, Ms. McNally. Good morning. May it please the court. I am Laura McNally, representing defendants, Penn Mutual and HTK. The district court's ruling should be affirmed because this case involves a straightforward application of SLUSA that is not undermined by any of the arguments that Mr. Cochran has raised. In finding that SLUSA preclusion applies here, the district court began with an analysis of the history of SLUSA drawn from this court's opinion in the 2000s. Case Bellin versus Merrill Lynch. As this court explained, Congress passed the Private Securities Litigation Reform Act, the PSLRA in 1995, to establish uniform standards for class actions alleging securities fraud. Put simply, the PSLRA makes it tougher for plaintiffs to bring a securities fraud class action. Plaintiffs, not shockingly, were not big fans. So what did they do? They started bringing what were essentially federal securities law claims as state law causes of action in state court in an end run around the PSLRA. In response, Congress enacted SLUSA, which made federal court, with limited exceptions not at issue here, the sole venue for class actions alleging fraud in the purchase and sale of securities and precludes them from proceeding under state law. Now relying on clear statements of congressional intent in enacting SLUSA, the Supreme Court has repeatedly directed courts to interpret SLUSA broadly to fulfill its purpose. Most recently, in 2018, in the cyan decision, the Supreme Court explained that it has over underscored over and over SLUSA's purpose to preclude certain vexing state law class actions. Now the relevant provision of SLUSA that is at issue here provides that no covered class action based upon the statutory or common law of any state or subdivision thereof may be maintained in any state or federal court by any private party alleging a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security. Now Mr. Cochran agrees that the only language at issue here is whether he has alleged a misrepresentation or omission. And this was in fact, the only issue considered by the district court. Now of course, plaintiffs aren't going to use the actual terms misrepresentation or omission in their complaints, because that would be their class action death now. Case in point here, Mr. Cochran's complaint avoids the use of the magic words misrepresentation or omission. So the district court relied on well-established case law to find that the complaint alleged a misrepresentation or omission because the core, the essence, the crux of this complaint was a misrepresentation or omission related to what HTK stated or did not state when providing investment advice. So Ms. McNally, you cannot bring a state common law fiduciary duty claim against a securities dealer without a misrepresentation? You cannot bring a state law common, a state common law cause of action against a securities dealer that is a class action that involves a misrepresentation or omission under SLUSA. He says he's not bringing a claim based on a misrepresentation. It's a strict common law fiduciary duty claim and breach of a fiduciary duty based on a conflict of interest period without any reliance on a misrepresentation by the securities dealer. It's impossible to bring a claim like that. Well, I think that he's alleging, and I thought I heard you say strict, he has a strict liability theory or per se breach of liability theory. And in the Holtz case, the Seventh Circuit Holtz case, Judge Easterbrook looked at that and he explained that a fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law. In fact, Judge Easterbrook described this as a staple of federal securities law and that's 846 F3D 928 at 932. So I think that that is a quintessential securities fraud complaint. The idea of non-disclosure of a potential conflict of interest, which also Judge Cardin's acknowledged, the plaintiff here is not even alleging true non-disclosure. He's acknowledged that the disclosures were in fact impeccable. The argument that he's making is I am not relying on any misrepresentations by HDK or Penn Mutual. My claim is based strictly on a violation of breach of fiduciary duty because of a conflict of interest, period. And so if we read his complaint narrowly, then why should his complaint be dismissed? So Slusa precludes exactly what Mr. Cochran is trying to do here. In paragraph three of his complaint, he writes that he has essentially copied and pasted the same claim that was made in the Cooper versus Pacific Life Insurance case. And he's testing this out as a breach of fiduciary duty claim. Slusa expressly says you can't do that. Nice try, but that's not, Slusa says no. That's what Congress enacted Slusa for, but it only bars class actions. Mr. Cochran could bring his claim in arbitration. And in fact, that's what Judge Boulay did here. He compelled his individual claim to arbitration. Slusa only bars class actions. And this is exactly what should happen here. And in fact, while Mr. Cochran claims that his complaint is not based on a misrepresentation or omission, you don't have to dig very far into this complaint to determine that it's pretty clearly based on the alleged failure to disclose or a misrepresentation in connection with any advice given about the suitability of a deferred variable annuity. The court goes on for two pages in its decision, listing out all the instances where a misrepresentation or omission is in essence alleged. His argument, as I understand it though, is I'm not alleging that I was given bad advice and I'm not alleging that HBK misrepresented the suitability of tax deferred variable annuities. And I'm limiting my complaint to an allegation that there was a breach of fiduciary duty based strictly on a conflict of interest. And if we read the complaint that way, then his claim doesn't preempt it by the end, right? Well, I think as you've pointed out, under Georgia law, that claim finds no support. Even a breach of fiduciary duty would essentially involve turns on a misrepresentation. But also you noted that he says that he's not alleging bad advice. He in fact does explicitly allege bad advice. And in his briefing, he says that this is a claim about bad investment advice. So he uses that exact term, bad advice. And in its decision, the district court noted that the 11th circuit has not directly addressed the question of when a complaint alleges a misrepresentation or omission, but that it came pretty close in the Bellin case. And Mr. Cochran says that Bellin is inapplicable because it dealt only with the in connection with language. But if you go to the end of that opinion, in affirming the district court's denial of remand, Bellin finds that a misrepresentation or omission can be implicitly alleged and thus subject to SLUSA. Because in that case, the plaintiffs in the amended complaint have really stripped the complaint of all allegations of misrepresentation or omission, much kind of cleaner than the complaint we're dealing with here. And the court still found that there could be this implicitly alleged misrepresentation or omission. But that is what the complaint turns on. The Bellin decision and the district court here similarly relied on the 8th circuit decision in Dudek, which involves very similar claims to those here. And the 8th circuit found that although plaintiffs did not specifically allege non-disclosure, these issues permeated their complaint, the essence of which was the unlawful marketing of tax deferred annuities, just like those here, either by misrepresenting their suitability for tax deferred retirement plans or by failing to disclose their unsuitability. The court also looked to directly on point case law from the 3rd circuit, from the 2nd circuit, to find that a claim alleges a misrepresentation or omission when the allegation is a factual predicate of the claim, even if it's not a legal element of the underlying state cause of action. Here, Mr. Cochran's claim is that his investment advisor, motivated by a conflict of interest, gave him bad advice. That's the factual predicate of his entire claim. And that's a quintessential securities fraud claim, and it's precluded by SLUSA. And my favorite language from all of the SLUSA jurisprudence, and it's because it reminds me of the line, if it looks like a duck, quacks like a duck, waddles like a duck, then it's a duck, is if it looks like a securities fraud claim, sounds like a securities fraud claim, and acts like a securities fraud claim, then it is a securities fraud claim, no matter how you dress it up. But Mr. Cochran desperately wants this not to be a securities fraud claim, and to instead have the court reach the merits of his breach of fiduciary duty claim under Georgia law. And again, he can have an arbitrator reach the merits of his individual claim, but to do so on a class-wide basis, he needs to survive SLUSA. Now, to avoid what here is a very straightforward application of SLUSA, he argues that there's a circuit split on the issue of when a complaint alleges a misrepresentation or omission. And Mr. Cochran highlights language from dissenting opinions in the Seventh Circuit's Goldberg case and the Ninth Circuit's Northstar case to support his circuit split argument. But as the Northstar majority opinion explained, we do not see as much daylight between the standards adopted by the various circuits, as does the dissent. Indeed, the law appears to be uniform across the circuits. And while the Goldberg dissent invited the plaintiffs there to seek review from the Supreme Court, the Supreme Court declined to review that decision, just like it declined to review the Seventh Circuit's previous decision in Brown and the Sixth Circuit's decision in Siegel, both of which are decisions that Mr. Cochran cites to support his circuit split argument. There is no circuit split that makes a difference to Mr. Cochran's claim. Every jurisdiction, every case looks past the absence of the exact words misrepresentation or omission and asks, what is the core, the gravamen, the essence, or the crux of the complaint? What is this case about? And no case digs into the underlying state law cause of action as Mr. Cochran asked the district court to do and asked this court to do. For this ruling, the district court's ruling does not eviscerate Holmes. And frankly, it says nothing about the substance of a claim under Holmes. Individual claims for alleged violation of the duties under Holmes are not affected by the district court's rulings, nor are class claims that would otherwise fail to satisfy Slusa. Now, Holmes confirms that that disclosure is a key question and correctly described how the tort of violating the fiduciary duty requires a misrepresentation. While Mr. Cochran interprets the reference in Holmes to a heightened duty to claim that defendant's alleged conflict of interest in and of itself is a breach of fiduciary duty, as I noted before, this per se strict liability theory has no support in Georgia law and is at odds with the plain language of Holmes. And Mr. Cochran has identified no standard by which to evaluate such a claim. But again, that really doesn't matter because Slusa doesn't require a court to examine the underlying state law cause of action. Nothing in the text of Slusa requires that, and none of the cases that follow Slusa would go that deep into the state law cause of action. The question is not whether Mr. Cochran's claims survive Holmes. The question is whether they survive Slusa. And the answer to that is simple. They do not. Now, finally, this court should reject Mr. Cochran's last contention that the district court's ruling somehow federalizes state law. Supreme Court made clear in the Dabbitt case, in endorsing a broad interpretation of Slusa, that Slusa acts solely as a procedural restrictions against class actions. It does not eviscerate state law causes of actions. As we described in our brief, following the Supreme Court's clear instruction, courts have repeatedly rejected Mr. Cochran's argument that Slusa preclusion would somehow federalize state law causes of action. Indeed, here, the district court allowed Mr. Cochran's individual claim to go to arbitration, which is where it belongs. And this court should affirm the district court's dismissal of the last claims pursuant to Slusa. Unless the court has any further questions, I will cede the rest of my minute and 38 seconds. All right. Thank you, Ms. McNally. Mr. Bain, you reserve some time for rebuttal. Thank you, Your Honor. One thing that neither the district court nor Ms. McNally have been able to identify is the answer to this question. If this is so clearly a fraud case, it looks like a fraud case, must be a fraud case. What was the disclosure failure? As I said before, the disclosures here are impeccable. The irony, I'm not sure that's quite the right word, but I'll go with it. The irony here is that what happened is that they disclosed this is a horrible investment and then they went ahead and sold it anyway. And a fiduciary cannot do that. Judge Carnes, to your point, your point seemed to be that the plaintiff here was fully informed. That's exactly our point as well. All the disclosures were made. How can this be a fraud claim? How can this be subject to Slusa preclusion when Slusa only precludes complaints that allege a misrepresentation or omission of material fact? We do the opposite here. And defendants, in fact, concede the opposite. In their reply at the district court level, this is docket number 35 at page three, plaintiff now concedes that any conflict was fully disclosed. We all agree that there was no disclosure failure here. This cannot be a fraud case. Um, well, I guess, as Ms. McNally correctly points out, we did a poll in Phelan versus Merrill Lynch, which is a very well written opinion, I might add, that what we look to is the grabbing of the complaint, and we read it broadly. And if the complaint implicitly alleges fraud or misrepresentation, then it's preempted by the act. And it seems when you look at the complaint, it seems that it's clear that what your client is complaining about is the suitability of a tax deferred variable annuity. And I mean, that's a classic misrepresentation, isn't it? No, as I was saying a moment ago, the irony point here, what's ironic is that they're casting this as a fraud claim while simultaneously arguing that everything was disclosed. And that's a fact it was disclosed. But you and the complaint say that they disclosed that they may recommend products that are also approved from another HTK approved product sponsor, right? But what the complaint really says is that what they failed to disclose is that the reason that they do that is because they received higher fees and commissions from selling those products, and that therefore, it was not in the customer's best interest to provide that investment advice. Is that not, in essence, a misrepresentation by failing to disclose that they were going to receive higher fees for selling those products? Your Honor, they did disclose that. What you're describing there is not a misrepresentation or omission. What you're describing is self-dealing. I agree. Self-dealing is the essence of the complaint. Judge Wilson, going to your point about Balin, Balin does not preclude the claims that issue here. Balin, if you look at its procedural history, the complaint alleged misrepresentations and omissions. The complaint in Dudek alleged misrepresentations and omissions. The complaints in Lander and Patinode alleged misrepresentations and omissions. What happened, that all of those complaints were originally filed in state court. They got removed to federal court and somewhere along the way, the lawyers realized their mistake. And what they did was try to walk it back through an amended complaint that scrubbed it free of that. And the courts essentially said, Your Honor, Judge Wilson, the courts said, no, no, we're not going to let you get away with that. That's artful pleading. You can't have it. Okay. You're trying to trick the court as to what the case is all about. But here, sometimes it's not artful pleading. All we're trying to do is state the claim articulated by a unanimous Georgia Supreme Court in Holmes. The district court's position is, sorry, that can't be done. Counsel, let me ask you this. If the recommendations and the representations that were implicit in the recommendation, at least implicit, if not explicit, are immaterial to your claim, why did you, throughout the complaint, allege that the basis of your client's or the class's loss, monetary loss, was the recommendations made to them or actions based on those recommendations? As I was just saying, what we were trying to do here was state the claim articulated in Holmes. If you look at that, that's... I'm not talking about what you were trying to do. I'm talking about the fact that paragraph 8, Mr. Cochran was urged and directed by his HTK Retirement Advisor fiduciary to invest his retirement funds in a variable annuity, Penn Mutual. Because Mr. Cochran followed that advice, he lost a lot of money and investment opportunity. Then on paragraph 16, it was told to Penn Mutual deferred a variable annuity based on the recommendation of his HTK advisor. Mr. Rowe, the advisor, convinced Mr. Cochran and a number of others, etc. And it goes on and on. HTK's investment advice discussed on page 57. HTK representatives make their recommendations, etc. The website says our representatives may recommend a product, available guidance, etc. And when you get down to the common questions of law and fact, which we ought to be able to depend on, paragraph 67, the very first one, sub 8, well, this has favored their own interest over those of plaintiffs and the class members by recommending. Your complaint is replete with allegations about recommendations the HTK advisors made to your client and others. And if that didn't matter, if it doesn't matter what they recommended to them, why did you make that a central part of your complaint? My answer to that, your honor, what doesn't matter is the individual discussions. The duty resides at the firm level. So what matters is what the firm did. Okay. And why did you put the individual, why did you put the individual recommendations in there? Good question. I don't know the answer to that. I'll tell you the answer to it. Let me enlighten you about that. The answer to it is that Holmes requires it. Well, the state law cause of action. To answer your point about the replete references to recommendations and advice, that's also what Holmes requires. There's a heightened fiduciary duty for a brokerage firm when making a recommendation as to which it has a conflict. Which is precisely why SLUSA bars this class action. Precisely. Because the state law cause of action, the Holmes decision, requires representations and omissions, failures to represent as an essential element. Griffin v. Fowler, there are three elements here. This is as simple as it comes in the world of law. Let me make it simple. The breach of fiduciary duty, you can't just say, it doesn't say misrepresentations. When all of the state requires a misrepresentation or a failure to disclose a material fact in order for there to be a breach of fiduciary duty. With all respect, your honor, I don't believe the law of Georgia does require that. Griffin v. Fowler, again. Thank you. Thank you, your honor. All right. Well, that completes our docket for this morning. And the court will be in recess until nine o'clock tomorrow morning. Court to recess. Thank you.